# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SHINA TALLEY | : | |
| | : | |
| Plaintiff, | : | CASE NO. 1:07-cv-00410 |
| | : | |
| v. | : | |
| | : | |
| COMCAST CORPORATION, INC., et al., | : | |
| | : | |
| | : | |
| Defendants. | : | |

## MEMORANDA OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANT EASTERN ACCOUNT SYSTEM OF
## <u>CONNECTICUT, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS</u>

**COOCH AND TAYLOR**

<u>/s/C. Scott Reese</u>
C. SCOTT REESE
Delaware Bar No. 2036
824 Market Street, Suite 1000
P.O. Box 1680
Wilmington, DE  19899-1680
(302) 984-3811
Dated:  August 24, 2007             Attorneys for Defendant
*Eastern Account System of Connecticut, Inc.*

## I.    <u>INTRODUCTION</u>

Plaintiff's Complaint asserts a cause of action against Eastern Account System of Connecticut, Inc. ("EASC") for a purported violation of 15 U.S.C. § 1681s-2, the Fair Credit Reporting Act ("FCRA") and Section 809b of the Fair Debt Collection Practices Act ("FDCPA").  Plaintiff also seeks injunctive relief under the Federal Trade Commission Act ("FTCA").  *See* Complaint, generally.  After a review of the allegations in Plaintiff's Complaint and the relevant law, however, it is clear that Plaintiff has failed to state a claim upon which relief can be granted.  Accordingly, Defendant is entitled to judgment on the pleadings.

## II.    <u>STATEMENT OF FACTS</u>

On February 12, 2007, Comcast retained EASC to collect on a delinquent account from Plaintiff. *See* Complaint, ¶ 8; *See* EASC's Answer, ¶ 8.  Plaintiff alleges that EASC furnished the account information to the credit reporting agencies, and that EASC refused to remove the account upon being notified by Plaintiff that the account was disputed.  *See* Complaint, ¶ 10, 21.

On those facts, Plaintiff attempted to state a claim under 15 U.S.C. 1681s-2(a) of the FCRA.  *Id*. at ¶ 34-37.  Plaintiff also requested a permanent injunction against EASC under 15 U.S.C. §53(b).  *Id*. at ¶ 40.  Finally, Plaintiff alleged a violation of Section 809(b) of the FDCPA (15 U.S.C. 1692g(b)).  *See* Complaint ¶ 38.

## III.    <u>LAW AND ANALYSIS</u>

### A.    <u>Standard of Review</u>

When deciding a Rule 12(c) motion, a district court must view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party. *Green v. Fund Asset Mgmt., L.P.,* 245 F.3d 214, 220 (3d Cir.2001). Judgment on the pleadings must be granted

when it is established that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law. *Jablonski v. Pan American World Airways, Inc.,* 863 F.2d 289, 290-91 (3d Cir.1988).

B.    **There is no private right of action under 15 U.S.C. § 1681s-2(a).**

Plaintiff asserts several claims under 15 U.S.C. 1681s-2(a) of the FCRA. *See* Complaint, ¶¶ 34-37.  15 U.S.C. §1681s-2(a) explains the duties of furnishers of information to provide accurate information.   There is no private right of action for alleged violations of §1681s-2(a). 15 U.S.C. § 1681s-2(c); *Fino v. Key Bank of New York*, 2001 WL 849700, *4 (W.D.Pa., July 27, 2001) (attached hereto as Exhibit A); *Evantash v. G.E. Capital Mortg. Services, Inc.*, 2003 WL 22844198, *7 (E.D.Pa., Nov. 25, 2003)(attached hereto as Exhibit B); *Barnhill v. Bank of America, N.A.*, 78 F.Supp.2d 696, 702 (D.S.C., 2005); *see also Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 782-783 (W.D. Ky., 2003).   Thus, Plaintiff's FCRA claim must be dismissed.

Moreover, Plaintiff has not alleged a claim under 15 U.S.C. § 1681s-2(b).  Such a claim would require Plaintiff to allege facts showing that Plaintiff disputed the account with a credit reporting agency, and then that credit reporting agency forwarded the dispute to EASC to trigger a reinvestigation. *See* 15 U.S.C. § 1681s-2(b).  That section provides that in response to a <u>notice from a consumer reporting agency</u> that a consumer disputes the information a furnisher has provided, the furnisher is required to (1) investigate the veracity of the disputed information; (2) review the information provided by the consumer reporting agency; (3) report the results of the investigation; and (4) correct any inaccuracies uncovered by the investigation. 15 U.S.C. § 1681s-2(b)(1)(A)-(D).

Instead of alleging those necessary facts, Plaintiff alleged just the opposite. Plaintiff tried to contact Experian to trigger a reinvestigation, but Plaintiff never reached anyone at Experian. *See* Complaint, ¶ 33. Thus, no duties under § 1681s-2(b) were invoked, and Plaintiff's Complaint must be dismissed. *See Carney v. Experian Information Solutions, Inc.*, 57 F. Supp. 2d 496, 502. (W.D. Tenn. 1999)

**C.    A private party cannot obtain an injunction under 15 U.S.C. § 53(b).**

Plaintiff cannot obtain an injunction under the FTCA. Pursuant to 15 U.S.C. §53(b), only attorneys designated by the Fair Trade Commission may bring suit to enjoin an act or practice. Thus, Plaintiff's request for an injunction must be denied.

**D.    Plaintiff has not stated a claim for relief under 15 U.S.C. § 1692g(b).**

Plaintiff claims that EASC violated 809(b) of the FDCPA. See Complaint, ¶ 38. Plaintiff's Complaint is fatally deficient because (1) Plaintiff did not allege that EASC was notified of a dispute within thirty days of the disclosures provided by EASC under 15 U.S.C. § 1692g(a), and (2) Plaintiff did not allege that EASC continued collection activities after notification of dispute within the thirty-day period.

15 U.S.C. § 1692g(b) provides as follows:

(b) Disputed debts
If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not

overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

That section clearly does not require a debt collector to provide verification of a debt, unless the consumer requests such verification within the thirty-day period described in 15 U.S.C. § 1692g(a). Plaintiff's Complaint is based upon the faulty conclusion that EASC had a duty to validate or verify the account before attempting to collect. Accordingly, Plaintiff's Complaint must be dismissed.

## IV.    CONCLUSION

Plaintiff's Complaint fails to state a claim upon which relief can be granted. Consequently, Defendant Eastern Account System of Connecticut respectfully requests this Court enter an Order granting it judgment on the pleadings.

COOCH AND TAYLOR


/s/C. Scott Reese_____
C. SCOTT REESE
Delaware Bar No. 2036
824 Market Street, Suite 1000
P.O. Box 1680
Wilmington, DE  19899-1680
(302) 984-3811

Dated:  August 24, 2007     Attorneys for Defendant
*Eastern Account System of Connecticut, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

On August 24, 2007, a copy of the foregoing has been filed with the court's CM/ECF

system which will notify all counsel.


/s/C. Scott Reese<u>_____</u>
C. SCOTT REESE
Delaware Bar No. 2036

1

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2003 WL 22844198 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**

Evantash v. G.E. Capital Mortg. Services, Inc.
E.D.Pa.,2003.
Only the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
Roberta L. EVANTASH, Plaintiff,
v.
G.E. CAPITAL MORTGAGE SERVICES, INC., et
al., Defendants.
**No. Civ.A. 02-CV-1188.**

Nov. 25, 2003.

Debtor, a co-obligor on a mortgage loan, sued the mortgagor and a credit reporting agency, asserting violations of the Fair Credit Reporting Act (FCRA). On defense motions for summary judgment, the District Court, Davis, J., held that: (1) genuine issues of material fact existed as to whether a bankruptcy reference in the debtor's credit report misled potential creditors into believing that she had filed for bankruptcy; (2) genuine issues of material fact existed as to whether the agency adequately reinvestigated the disputed bankruptcy reference; (3) genuine issues of material fact existed as to whether the mortgagor negligently failed to conduct an investigation; (4) debtor's claim fell within the Fair Credit Reporting Act (FCRA) section addressing duties of furnishers of information upon notice of dispute; and (5) genuine issues of material fact existed as to whether the credit reporting agency acted with conscious or reckless disregard to the debtor's rights.

Motions denied.
West Headnotes

**[1] Federal Civil Procedure 170A ⟷2491.8**

170A Federal Civil Procedure
  170AXVII Judgment
    170AXVII(C) Summary Judgment
      170AXVII(C)2 Particular Cases
        170Ak2491.8 k. Consumer Credit,
Cases Involving. Most Cited Cases
Genuine issues of material fact as to whether a

bankruptcy reference in debtor's credit report misled potential creditors into believing that she had filed for bankruptcy, whether a credit reporting agency followed reasonable procedures in preparing the credit report, and whether the bankruptcy reference played a substantial role in a bank's decision to deny the debtor's credit application precluded summary judgment for the agency on a negligent noncompliance claim in the debtor's suit under the Fair Credit Reporting Act (FCRA). Consumer Credit Protection Act, § 607(b), as amended, 15 U.S.C.A. § 1681e(b).

**[2] Federal Civil Procedure 170A ⟷2491.8**

170A Federal Civil Procedure
  170AXVII Judgment
    170AXVII(C) Summary Judgment
      170AXVII(C)2 Particular Cases
        170Ak2491.8 k. Consumer Credit,
Cases Involving. Most Cited Cases
Genuine issues of material fact as to whether a credit reporting agency adequately reinvestigated a disputed bankruptcy reference in a credit report precluded summary judgment for the agency in a debtor's Fair Credit Reporting Act (FCRA) suit. Truth in Lending Act, § 611(a), as amended, 15 U.S.C.A. § 1681i(a).

**[3] Federal Civil Procedure 170A ⟷2491.8**

170A Federal Civil Procedure
  170AXVII Judgment
    170AXVII(C) Summary Judgment
      170AXVII(C)2 Particular Cases
        170Ak2491.8 k. Consumer Credit,
Cases Involving. Most Cited Cases
Genuine issues of material fact as to whether a mortgagee, as a furnisher of credit information, negligently failed to conduct an investigation regarding a disputed bankruptcy reference in a credit report, and to report its findings accordingly, precluded summary judgment for the mortgagee on a debtor's claim that the mortgagee violated the Fair Credit Reporting Act's (FCRA) investigation

Not Reported in F.Supp.2d, 2003 WL 22844198 (E.D.Pa.)

**(Cite as: Not Reported in F.Supp.2d)**

requirement. Consumer Credit Protection Act, § 623(b)(1)(a), as amended, 15 U.S.C.A. § 1681s-2(b)(1)(a).

**[4] Credit Reporting Agencies 108A ⟨⟩4**

108A Credit Reporting Agencies
    108Ak4 k. Actions by or Against Agency. Most Cited Cases
Debtor's claim fell within the Fair Credit Reporting Act (FCRA) section addressing duties of furnishers of information upon notice of dispute, for which there was a private right of action, rather than under the section addressing the duties of a furnisher upon notice by the consumer of disputed information, where the furnisher received notice from a consumer reporting agency, as opposed to the consumer alone, that credit information was disputed. Consumer Credit Protection Act, § 623(a,b), as amended, 15 U.S.C.A. § 1681s-2(a,b).

**[5] Federal Civil Procedure 170A ⟨⟩2491.8**

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)2 Particular Cases
                170Ak2491.8 k. Consumer Credit, Cases Involving. Most Cited Cases
Genuine issues of material fact as to whether credit reporting agency acted with conscious or reckless disregard to a debtor's rights precluded summary judgment for the agency on the debtor's punitive damages claim under the Fair Credit Reporting Act (FCRA). Consumer Credit Protection Act, § 616, as amended, 15 U.S.C.A. § 1681n.

Cary L. Flitter, Lundy, Flitter, Beldecos & Berger PC, Narberth, PA, James A. Francis, Francis & Mailman, PC, Philadelphia, PA, for Plaintiff.
Charles Shimberg, Charles Shimberg PC, Timothy J. Szuhaj, Charles Shimberg, PC, Haddonfield, NJ, Bruce S. Luckman, Satzberg, Trichon, et al., Timothy P. Creech, Saltzberg, Trichon, et al., Philadelphia, PA, for Defendants.

*MEMORANDUM AND ORDER*
DAVIS, J.

**\*1** Presently before this Court are Defendant G.E. Capital Mortgage Services, Inc.'s Motion for Summary Judgment (Dkt. No. 24) and Defendant Trans Union LLC's Motion for Summary Judgment (Dkt. No. 25). For the reasons discussed below, Defendants' Motions are DENIED.

I. Factual History and Procedural Background

Plaintiff Roberta L. Evantash and her husband, Bernard Evantash, are co-obligors on a mortgage loan with G.E. Capital Mortgage Services, Inc. ("G.E.Capital")[FN1] bearing account number 15175516 (the "Account"). On March 6, 2000, Bernard Evantash filed for bankruptcy under Chapter 7 of the Bankruptcy Code and included the Account in his schedule.[FN2] Upon receiving electronic notification from the bankruptcy court that Mr. Evantash had filed for bankruptcy and included the Account in his schedule, Trans Union LLC ("Trans Union")[FN3] began reporting the Account on Plaintiff's credit report as "INCLUDED IN BANKRUPTCY."

> FN1. G.E. Capital is a furnisher of credit information and, as such, its obligations are set forth in Section 1681s-2 of the Fair Credit Reporting Act. A furnisher of credit information is an entity "which transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies such as Experian, Equifax, MCCA, and Trans Union." *Carney v. Experian Info. Solutions, Inc.* 57 F. Spp.2d 496, 501 (W.D.Tenn.1999).

> FN2. On July 31, 2000, the bankruptcy court entered an order discharging Mr. Evantash and closing the case.

> FN3. Trans Union is a credit reporting agency under Section 1681a(f) of the Fair Credit Reporting Act.

In May 2000, Plaintiff applied for a revolving line of credit from Dial National Bank ("Dial") to purchase a dishwasher from American Appliance.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 3
Not Reported in F.Supp.2d, 2003 WL 22844198 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

On May 25, 2000, Dial notified Plaintiff that her credit application was denied because of "BANKRUPTCY." Plaintiff's Response and Opposition to Defendant Trans Union's Motion for Summary Judgment ("Pl's. Resp. & Opp'n.") (Dkt. No. 31), Ex. H. In reaching its decision, Dial relied on information from Trans Union. *Id.*

After receiving Dial's statement of credit denial, Plaintiff, through her husband's bankruptcy attorney, informed Trans Union that she did not file for bankruptcy, and requested that Trans Union remove any bankruptcy references in her credit report. *See* Pl's Resp. & Opp'n, Ex. D. In response, Trans Union sent an Automated Consumer Dispute Verification ("ACDV") to G.E. Capital, informing G.E. Capital that Plaintiff was disputing the bankruptcy reference in her credit report. *See* Pl's. Resp. & Opp'n., Ex. E. Specifically, the ACDV stated: "bankruptcy not his, verify consumer liability." *Id.* On June 17, 2000, G.E. Capital responded "Account included in bankruptcy of another person not included in bankruptcy" and instructed Trans Union to correct Plaintiff's credit report. *Id.* Accordingly, Trans Union removed the "INCLUDED IN BANKRUPTCY" notation.

Subsequently, Trans Union received reporting tapes from G.E. Capital which described the Account's status as "BNKRPTCY 7/11." Trans Union's Memorandum of Law in Support of Its Motion for Summary Judgment ("Trans Union's Mem."), Ex. E at 3. As a result, Trans Union reinserted the "INCLUDED IN BANKRUPTCY" remark on Plaintiff's credit report. In October 2000, Plaintiff learned of Trans Union's reinserting the bankruptcy remark and contacted Trans Union twice to dispute the accuracy of the entry. On October 17, 2000, Trans Union sent an ACDV to G.E. Capital, which again responded "Account included in bankruptcy of another person not included in bankruptcy" and instructed Trans Union to correct Plaintiff's credit report. Trans Union's Mem., Ex. C at 103. On October 25, 2000, Trans Union sent another ACDV to G.E. Capital, which responded that the Account was in good standing and instructed Trans Union to remove the bankruptcy reference because Bernard

Evantash, not Plaintiff, had filed for bankruptcy. *See* G.E. Capital's Memorandum of Law in Support Its Motion for Summary Judgment ("G.E. Capital's Mem."), Ex. D at 159. Trans Union nevertheless verified the Account as accurately reported because it was included in a bankruptcy. *See* Trans Union's Mem., Ex. N.

**\*2** In November 2000, Plaintiff again disputed Trans Union's reporting of the Account as "INCLUDED IN BANKRUPTCY." On November 22, 2000, Trans Union sent another ACDV to G.E. Capital, which informed Trans Union that Plaintiff was not in bankruptcy and instructed Trans Union to correct her credit report. *See* G.E. Capital's Mem., Ex. D at 164. Trans Union again verified the Account as accurately reported. *See* Trans Union's Mem., Ex. N.

After Fleet reduced Plaintiff's credit limit and Discover and MBNA increased her Annual Percentage Rate ("APR") based on information provided by Trans Union, Plaintiff again disputed the accuracy of her credit report. *See* Pl.'s Resp. & Opp'n., Ex. I. Accordingly, on September 21, 2001, Trans Union sent another ACDV to G.E. Capital, which again responded that the Account was not included in bankruptcy and instructed Trans Union to remove the bankruptcy reference from Plaintiff's credit report. *See* G.E. Capital's Mem., Ex. D at 166-67. On September 25, 2001, Trans Union removed the remark "INCLUDED IN BANKRUPTCY."

On March 7, 2002, Plaintiff filed this action under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (the "FCRA" or the "Act") against G.E. Capital and Trans Union. (Dkt. No. 1). Plaintiff alleges that G.E. Capital: (1) failed to conduct an adequate investigation regarding the disputed information; (2) failed to properly and accurately report Plaintiff's status and the status of the Account; and (3) continued to report or re-report inaccurate information. Compl. ¶ 21. Plaintiff alleges that Trans Union: (1) failed to conduct an adequate investigation; (2) permitted repeated reinsertions of inaccurate and misleading

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 22844198 (E.D.Pa.)

**(Cite as: Not Reported in F.Supp.2d)**

information in Plaintiff's credit report; (3) failed to follow reasonable procedures to assure maximum possible accuracy of the information in her credit report; (4) failed to conduct an adequate reinvestigation; and (5) continued to include on Plaintiff's credit report the remark, "INCLUDED IN BANKRUPTCY." *Id.* at ¶ 22. Plaintiff seeks, among other things, punitive damages. In response, G.E. Capital argues that it has satisfied its duty to investigate the disputed information pursuant to the FCRA and Plaintiff does not have a private cause of action against G.E. Capital under the Act for failure to report accurate information. G.E. Capital's Mem. 5-10. Trans Union argues that its reporting of the Account as "INCLUDED IN BANKRUPTCY" was accurate as a matter of law, and even if the remark was misleading, Plaintiff cannot adequately plead the essential elements of a Section 1681e(b) claim. Trans Union's Mem. 10-19. Moreover, Trans Union argues that Plaintiff cannot sustain a claim for punitive damages under the FCRA because she has failed to demonstrate a willful violation of the Act. *Id.* 19-21.

### II. Standard of Review

Summary judgment is appropriate when "there is no genuine issue of material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.,* 32 F.3d 768, 777 (3d Cir.1994). The moving party bears the burden of showing that the record discloses no genuine issues as to any material fact and that he or she is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the non-moving party must go beyond the pleadings to set forth specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). There is a genuine issue for trial "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 249. "Such affirmative evidence-regardless of whether it is direct or circumstantial-must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams v. Borough of W. Chester,* 891 F.2d 458, 460-61 (3d Cir.1989).

### III. Analysis

#### A. Trans Union's Motion to Strike

**\*3** As an initial matter, Trans Union moves to strike Plaintiff's expert report (Dkt. No. 39), submitted by Plaintiff in opposition to Trans Union's Motion for Summary Judgment. Because we have not relied on the expert report in reaching a decision here, Trans Union's Motion to Strike is denied.

#### B. FCRA Claims

Congress enacted the FCRA to "insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4) (2003). The Act's creation was prompted by "congressional concern over abuses in the credit reporting industry ." *Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir.1995). "In the FCRA, Congress has recognized the crucial role that consumer reporting agencies play in collecting and transmitting consumer credit information, and the detrimental effects inaccurate information can visit upon both the individual customer and the nation's economy as a whole." *Philbin v. Trans Union Corp.* 101 F.3d 957, 962 (3d Cir.1996) (citing 15 U.S.C. § 1681(a)(1), (3)).

##### 1. Section 1681e(b)

Section 1681e(b) of the FCRA penalizes dissemination of inaccurate reports: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

information concerning the individual about whom the report related." 15 U.S.C. 1681e(b). In order to succeed in a Section 1681e(b) claim, a plaintiff must establish each of the following four elements: (1) inaccurate information was included in his or her credit report; (2) the inaccuracy was due to the defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) he or she suffered injury; and (4) his or her injury was caused by the inclusion of the inaccurate entry. *Philbin,* 101 F.3d at 963.

[1] Relying on *Heupel v. Trans Union LLC,* 193 F.Supp.2d 1234 (N.D.Al.2002) and *Todd v. Associated Credit Bureau Servs., Inc.,* 451 F.Supp. 447 (E.D.Pa.1977), *aff'd,* 578 F.2d 1376 (3d Cir.1978), *cert. denied,* 439 U.S. 1068, 99 S.Ct. 834, 59 L.Ed.2d 33 (1979), Trans Union argues that it is entitled to summary judgment because its reporting of the Account as "INCLUDED IN BANKRUPTCY" was accurate as a matter of law. In *Heupel,* the plaintiff was a joint obligor on a bank account, which was covered under her ex-husband's Chapter 13 Bankruptcy. 193 F.Supp.2d at 1237. The plaintiff disputed the defendant's reporting in her credit report that the account was subject to a Chapter 13 Wager Earner Plan. The defendant moved for summary judgment, arguing that its reporting of the account was accurate. The court concluded that the FCRA merely requires credit reporting agencies to report information that is "technically accurate" and granted the defendant's motion. *Id.* at 1240-41.

In *Todd,* Associated Bureau Services, Inc. ("Associated"), a credit reporting agency under the FCRA, reported in late 1975 that the plaintiffs, as of the early part of 1973, owed Hess', Inc. $1,200.00 without mentioning that the plaintiffs had paid off their debt. 451 F.Supp. at 448. The plaintiffs brought an action against Associated, alleging that the "misleading, stale and erroneous credit report distributed to various retailers by Associated rose to the level of negligent noncompliance with the Act." *Id.* at 448. The court held that the plaintiffs could not sustain their cause of action because Associated's report was accurate.

*Id.* at 449.

**\*4** Plaintiff responds that although the remark may be "technically accurate," under *Koropoulos v. Credit Bureau, Inc.,* 734 F.2d 37 (D.C.Cir.1984), it is actionable because it is misleading or materially incomplete in that it suggests Plaintiff filed for bankruptcy. In *Koropulos,* the District of Columbia Circuit Court of Appeals held that granting "summary judgment on the grounds that the information in [a credit] report was technically accurate, regardless of any confusion generated in the recipient's minds as to what it meant, [is] improper." *Id.* at 42. The court also noted that the "technical accuracy defense" is not in accord with the purpose of the FCRA. *Id.* 40-42.

Because the Third Circuit has not endorsed the "technical accuracy defense," FN4 we shall apply the less stringent approach articulated in *Koropoulos.* Applying that approach, we find that there is a genuine issue of material fact as to whether Trans Union's treatment of the Account was so misleading as to be inaccurate within the meaning of Section 1681e(b). A reasonable jury could find that the bankruptcy reference in Plaintiff's credit report misled potential creditors into believing that she had filed for bankruptcy. *See* Pl's Resp. & Opp'n., Ex. H; FN5 *see also* Trans Union's Mem., Ex. H at 53. FN6

> FN4. The Third Circuit affirmed *Todd* without opinion. *See* 578 F.2d 1376. Nevertheless, even if we were to adopt the *Todd* approach, there is a question of fact as to whether the "INCLUDED IN BANKRUPTCY" remark was indeed "technically accurate." Defendants stake out competing positions on this issue: Trans Union argues that the remark was correct, *see* Trans Union's Mem. 10-17, whereas, G.E. Capital contends that it was incorrect. *See* G.E. Capital's Mem. 3-6.

> FN5. A reasonable jury could infer from Dial's denying Plaintiff's credit application because of "BANKRUPTCY" based on

Not Reported in F.Supp.2d                                                                                                    Page 6
Not Reported in F.Supp.2d, 2003 WL 22844198 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

information in her credit report that Dial believed Plaintiff had filed for bankruptcy.

> FN6. In determining whether to increase Plaintiff's APR, MBNA did not review her credit report. Instead, MBNA based its decision on her credit score, which, according to Michael Green of MBNA, could have been influenced by the bankruptcy reference in her credit report. *See* Trans Union's Mem., Ex. H at 53.

Having determined that the "INCLUDED IN BANKRUPTCY" notation might have been inaccurate, we now turn to the question of whether Trans Union followed reasonable procedures in preparing Plaintiff's credit report. With respect to the question of reasonableness, "the Third Circuit has discussed three approaches-without endorsing any of the three-for determining whether a plaintiff has presented sufficient evidence to survive summary judgment." *Sheffer,* 2003 WL 21701573, at *2. Under the most stringent approach, a plaintiff " 'must minimally present some evidence from which a trier of fact can infer that the consumer reporting agency failed to follow reasonable procedures in preparing a credit report." ' *Id.* (quoting *Stewart v. Credit Bureau, Inc.,* 734 F.2d 47, 51) (D.C.Cir.1984). Typically, the question of whether a credit reporting agency followed reasonable procedures is reserved for a jury. *See, e.g., Cousin v. Trans Union Corp.,* 246 F.3d 359, 368 (5th Cir.2001). Here, Trans Union removed the "INCLUDED IN BANKRUPTCY" remark in June 2000, after G.E. Capital notified Trans Union that it was reporting incorrect information on Plaintiff's credit report. Upon receiving reporting tapes from G.E. Capital which described the Account's status as "BNKRPTCY 7/11," however, Trans Union reinserted the bankruptcy reference on Plaintiff's credit report. Despite the inconsistencies in G.E. Capital's reporting, Trans Union failed to further inquire about the status of the Account. Pl.'s Resp. & Opp'n., Ex. N at 139-40. That alone provides a basis from which a jury could infer that Trans Union's procedures were unreasonable.

**\*5** Trans Union further argues that Plaintiff cannot adequately plead causation and harm. We disagree. To satisfy these elements, a plaintiff must "produce evidence from which a trier of fact could infer that the inaccurate entry was a 'substantial factor' that brought about the denial of credit." *Philbin,* 101 F.3d 957, 968. Plaintiff has demonstrated that Dial's denying her credit application because of a "BANKRUPTCY" was based on information supplied by Trans Union. Plaintiff has also shown that her credit reports did not contain any delinquent accounts or derogatory information other than the "INCLUDED IN BANKRUPTCY" remark. A reasonable jury could infer that Dial was referring to the bankruptcy remark contained in Plaintiff's credit report, and that the remark played a substantial role in its decision to deny Plaintiff's credit application.[FN7]

> FN7. Plaintiff has also demonstrated that Fleet decreased her credit limit and MBNA and Discover increased her APR based on information from Trans Union. *See* Pl.'s Resp. & Opp'n., Ex. I. Again, given the absence of adverse information in Plaintiff's credit report, a trier of fact could reasonably infer that the bankruptcy remark played a substantial role in their credit determinations.

In sum, we conclude that Plaintiff has produced evidence sufficient to satisfy her burden of proving a prime facie case of negligent noncompliance with 15 U.S.C. § 1681e(b).

### 2. Section 1681i

**[2]** Under Section 1681i(a) of the Act, if a consumer notifies a consumer reporting agency of a dispute regarding the completeness or accuracy of information contained in the consumer's credit report, the agency is required to reinvestigate the disputed information. 15 U.S.C. § 1681i(a). The agency must do more than "merely parrot[ ] information received from other sources; [ ] a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-00410-MPT    Document 21-2    Filed 08/24/2007    Page 8 of 20

Not Reported in F.Supp.2d                                                    Page 7
Not Reported in F.Supp.2d, 2003 WL 22844198 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

the obligations contemplated by the statute." *Cushman v. Trans Union Corp.,* 114 F.3d 220, 225 (3d Cir.1997). In order to fulfill its obligation under Section 1681i(a), "a credit reporting agency may be required in certain circumstances, to verify the accuracy of its initial source of information." *Id.* The scope of an agency's duty to go beyond the original source depends on a number of factors, including:

(1) whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency knows or should know that the source is unreliable; and (2) the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer.

*Sheffer,* 2003 WL 21710573, at *2 (citing *Cushman,* 114 F.3d at 225). "Whatever considerations exist, it is for 'the trier of fact [to] weigh the[se] factors in deciding whether [an agency] violated the provisions of section 1681i.' *Id.* at 225-26 (quoting *Henson v. CSC Credit Services,* 29 F.3d 280, 287 (7th Cir.1994)); *see also Cousin,* 246 F.3d at 368 (noting that the question of weather a consumer reporting agency followed reasonable procedures is typically a question of fact reserved for the jury); *Cahlin v. Gen. Motors Acceptance Corp.,* 936 F.2d 1151, 1156 (11th Cir.1991) (same).

In *Stevenson v. TRW Inc.,* 987 F.2d 288 (5th Cir.1993), the Fifth Circuit held that the defendant credit reporting agency's contacting subscribers only through Consumer Dispute Verification Forms despite the complexity of Plaintiff's dispute violated Section 1681i. *Id.* at 293; *see also Cushman,* 115 F.3d at 225 (agreeing with the conclusions reached in *Stevenson* ). The court also noted that "[a]llowing inaccurate information back onto a credit report after deleting it because it is inaccurate is negligent." *Stevenson,* 987 F.2d at 293. Here, Trans Union contacted G.E. Capital only through ACDVs, despite Plaintiff's disputing the "INCLUDED IN BANKRUPTCY" notation at least five times. Moreover, Trans Union may have reinserted inaccurate information on Plaintiff's

credit report.[FN8] Therefore, a reasonable jury could find that Trans Union violated Section 1681i.

> FN8. Trans Union argues that although it reinserted the "INCLUDED IN BANKRUPTCY" remark after receiving reporting tapes from G.E. Capital which described the Account's status as "BNKRPTCY 7/11," it was not negligent because Section 1681i only punishes the " 'allowing [of] *in* accurate information back onto a credit report....'" Trans Union's Mem. 18 (emphasis in original). As previously discussed, however, there is a factual question as to whether the bankruptcy reference in Plaintiff's credit report was so misleading as to be inaccurate within the meaning of Section 1681e(b).

### 3. Section 1681s-2(b)(1)

**\*6** [3] As noted above, when a consumer notifies a consumer reporting agency of a dispute regarding the accuracy of information contained in the consumer's credit report, the agency must reinvestigate the disputed information. As part of its reinvestigation, the agency must notify the furnisher of the credit information of the dispute. Section 1681s-2(b)(1) of the FCRA requires the furnisher to conduct an investigation regarding the dispute and to report its findings accordingly:

After receiving notice pursuant to section 1681(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall -

(A) conduct an investigation with respect to disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681(a)(2);

(C) report the results of the investigation to the consumer reporting agency; and

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the

Not Reported in F.Supp.2d, 2003 WL 22844198 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

person furnished the information....

15 U.S.C. § 1681s-2(b)(1).

The Act does not provide any indication as to the level of investigation required under Section 1681s-2(b)(1). Section 1681s-2(b)(1)'s investigation requirement for furnishers, however, "is analogous to the requirement imposed upon credit reporting agencies under § 1681i(a) to reinvestigate a consumer's dispute regarding information contained in his credit report" and, therefore, furnishers of credit are required to conduct a reasonable investigation. *Bruce v. First U.S.A. Bank, National Association,* 103 F.Supp.2d 1135, 1143 (E.D.Miss.2000). Whether such an investigation has been conducted is generally a question of fact for the jury. *See Cushman,* 115 F.3d at 225; *Henson,* 29 F.3d at 287.

G.E. Capital argues that "there is no genuine issue of material fact because the reasonableness of the investigation is evidenced by the fact that G.E. Capital took all reasonable measures to verify the accuracy of the information in dispute." We disagree. Trans Union sent G.E. Capital five ACDVs informing G.E. Capital of Plaintiff's disputes regarding the bankruptcy reference in her credit report. G.E. Capital responded to the ACDVs by sending short, electronic messages notifying Trans Union that Plaintiff had not filed for bankruptcy and instructing Trans Union to correct her credit report. G.E. Capital, however, did not telephone Trans Union or send it a facsimile, which according to G.E. Capital's former Credit Reporting Manager, Barbara Lewis, are ordinary steps when a consumer continues to dispute the accuracy of an entry in his or her credit report. Pl.'s Mem., Ex. N at 139-40. Moreover, G.E. Capital sent inconsistent messages to Trans Union: In June 2000, G.E. Capital notified Trans Union that the "Account [was] included in bankruptcy of another person not included in bankruptcy" and instructed Trans Union to correct Plaintiff's credit report, Pl.'s Resp. & Opp'n., Ex. E, whereas, in July 2000, G.E. Capital sent Trans Union reporting tapes which described the Account's status as "BNKRPTCY." Trans

Union's Mem., Ex. E at 3. Finally, a G.E. Capital customer service representative gave Plaintiff the wrong information about the effect of Mr. Evantash's bankruptcy on her credit. Pl.'s Mem., Ex. N at 141-42. Based on the foregoing, we conclude that the record discloses genuine issues of material fact as to whether G.E. Capital negligently failed to comply with Section 1681s-2(b)(1)(a)'s investigation requirement.

**\*7** [4] G.E. Capital further argues that Plaintiff does not have a private cause of action against G.E. Capital under the FCRA because her claims fall within the provisions of Section 1681s-2(a). G.E. Capital's Mem. 5-10. Section 1681s-2(a) provides in relevant part: "A [furnisher] shall not furnish information ... to any consumer reporting agency if ... the [furnisher] has been notified by the consumer ... that [the] specific information is inaccurate ... and ... the information is, in fact, inaccurate. 15 U.S.C. § 1681s-2(a)(1)(B). The provisions of Section 1681s-2(a) are to be "enforced exclusively ... by the Federal agencies and officials and [certain] State officials...." 15 U.S.C. § 1681s-2(d). Thus, there is no private right of action for a violation of Section 1681s-2(a). *See, e.g., Fino v. Key Bank of New York,* No. Civ. A. 00-375E, 2001 WL 849700 (W.D.Pa. July 27, 2001).

Contrary to G.E. Capital's arguments, Plaintiff's claims fall squarely within the provisions of Section 1681s-2(b). Section 1681s-2(b), which is entitled "Duties of furnishers of information upon notice of dispute," provides:

After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall -

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency; and

(D) if the investigation finds that the information is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumer on a nationwide basis.

15 U.S.C. § 1681s-2(b). Here, Plaintiff, through her husband's bankruptcy attorney, contacted Trans Union to dispute the bankruptcy reference in her credit report. In response, Trans Union sent an ACDV to G.E. Capital notifying G.E. Capital of Plaintiff's dispute. After receiving notice of the dispute from Trans Union, G.E. Capital's duty under Section 1681s-2(b) was triggered. See, e.g., Whisenant v. First Nat'l Bank & Trust Co., 258 F.Supp.2d 1312, 1316-17 (N.D.Ok.2003) ("Courts have consistently held that a furnisher's duty under § 1681s-2(b) is triggered only after the furnisher receives notice of the dispute from a consumer reporting agency.") (citations omitted). Section 1681s-2(b), unlike Section 1681s-2(a), may form the basis for a private cause of action where, as here, "the plaintiff shows that the furnisher 'received notice from a consumer reporting agency,' as opposed to the plaintiff alone, 'that the credit information is disputed." Fino, 2001 WL 849700, at *5 (quoting Dornhecker v. Ameritech Corp., 99 F.Supp.2d 918, 928-29 (N.D.Ill.2000)) (emphasis in original). Accordingly, we conclude that Plaintiff has a private cause of action against G.E. Capital.

## C. Punitive Damages

*8 [5] Under Section 1681n, "[a]ny person who willfully fails to comply with any requirement imposed under [the FCRA] with respect to any consumer is liable to that consumer in an amount equal to the sum of ... such amount of punitive damages as the court may allow." 15 U.S .C. § 1681n. "To show willful noncompliance with the FCRA, [a plaintiff] must show that defendants 'knowingly and intentionally committed an act in conscious disregard for the rights of others,' but need not show 'malice or evil motive." Philbin, 101 F.3d at 970 (quoting Pinner v. Schmidt, 805 F.2d 1258, 1263 (5th Cir.1986)). "[T]o justify an

award of punitive damages, a defendant's actions must be on the same order as willful concealments or misrepresentations [such as the adoption of a] reinvestigation policy either knowing that policy to be in contravention of the possessed by consumers pursuant to the FCRA or in reckless disregard of whether the policy contravened those rights ." Cushman, 115 F.3d at 226.

Trans Union contends that Plaintiff has failed to present any evidence of wilful noncompliance under the FCRA. Punitive damages, however, "may be warranted where the evidence shows that inaccuracies in credit reports arise from something more than 'an isolated instance of human error which [the agency] promptly cures." See Sheffer, 2003 WL 21710573, at *3 (quoting Boris v. Choicepoint Servs., 249 F.Supp.2d 851, 862 (W.D.Ky.2003). Here, there is evidence regarding the conduct of Trans Union suggesting that the problems Plaintiff experienced were more than an isolated instance of human error which Trans Union promptly cured. When a consumer disputes the accuracy of information in his or her credit report to Trans Union and the furnisher disagrees with the consumer's dispute, as a matter of policy, Trans Union reports the disputed information as reported by the furnisher. See Pl.'s Resp. & Opp'n., Ex. F at 61-62. Notwithstanding this policy, Trans Union continued to report the Account on Plaintiff's credit report as "INCLUDED IN BANKRUPTCY" even though G.E. Capital notified Trans Union that their reporting was incorrect. On that basis alone, a jury may find that Trans Union acted with conscious or reckless disregard to Plaintiff's rights and, therefore, we conclude that Trans Union is not entitled to summary judgment on Plaintiff's punitive damages claim.

## IV. Conclusion

Accordingly, this Court denies Defendants' motions for summary judgment. An appropriate Order follows.

## ORDER

AND NOW, this day of November, 2003, upon

Not Reported in F.Supp.2d                                                        Page 10
Not Reported in F.Supp.2d, 2003 WL 22844198 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

consideration of G .E. Capital Mortgage Services, Inc.'s Motion for Summary Judgment and Trans Union LLC's Motion for Summary Judgment, and Plaintiff Roberta L. Evantash's responses thereto, it is hereby ORDERED and DECREED that:

1) Defendant G.E. Capital Mortgage Services, Inc.'s Motion for Summary Judgment (Dkt. No. 24) is DENIED;

2) Defendant Trans Union LLC's Motion for Summary Judgment (Dkt. No. 25) is DENIED; and

**\*9** 3) Defendant Trans Union LLC's Motion to Strike Plaintiff's Expert Report (Dkt. No. 39) is DENIED.

E.D.Pa.,2003.

Evantash v. G.E. Capital Mortg. Services, Inc.

Not Reported in F.Supp.2d, 2003 WL 22844198 (E.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2

Not Reported in F.Supp.2d                                                      Page 1
Not Reported in F.Supp.2d, 2001 WL 849700 (W.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**

Fino v. Key Bank of New York
W.D.Pa.,2001.
Only the Westlaw citation is currently available.
United States District Court, W.D. Pennsylvania.
Lorena M. FINO, Plaintiff,
v.
KEY BANK OF NEW YORK, et al., Defendants.
**No. CIV. A. 00-375E.**

July 27, 2001.

*MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION*

CAIAZZA.

### I. *RECOMMENDATION*

*\*1 For the reasons stated below, it is recommended that the District Court: *sua sponte* dismiss under Federal Rule of Civil Procedure 12(b)(6) the Plaintiff's claims against the Defendant KeyBank National Association;[FN1] and deny as moot the Defendant's Motion to Dismiss (Doc. 25).

> FN1. Although the Plaintiff's pleadings identify the relevant Defendant as "Key Bank of New York," the parties appear to agree that its correct name is "KeyBank National Association." *Compare* Mot. to Dismiss (Doc. 25) *with* Pl.'s Resp. (Doc. 27) (both identifying the Defendant as KeyBank National Association).

### II. *REPORT*

#### *BACKGROUND*

##### A. *Procedural History*

The Plaintiff Lorena M. Fino ("the Plaintiff" or "Ms. Fino") filed this lawsuit on December 6, 2000, alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("the FCRA" or "the Act"). *See generally* Compl. (Doc. 1). In her most recent pleadings, Ms. Fino names as Defendants

two consumer reporting agencies, Experian Information Solutions, Inc., and Trans Union LLC (collectively "the Reporting Agencies"), along with KeyBank National Association ("Key Bank"), a banking institution and "furnisher[ ] of information [regarding the Plaintiff] to consumer reporting agencies." *See generally* Am. Compl. (Doc. 22) at ¶¶ 2-3, 18; *see also generally id.* at ¶ 46 (claiming that Key Bank's obligations are governed by 15 U.S.C. § 1681s-2, which addresses "[r]esponsibilities of furnishers of information to consumer reporting agencies").[FN2]

> FN2. One other consumer reporting agency, Equifax Credit Information Service ("Equifax"), was named in the original Complaint; that entity was voluntarily dismissed by the Plaintiff on February 1, 2001. *See* Doc. 9.

On April 9, 2001, and with leave of court, the Plaintiff filed an Amended Complaint. *See* Doc. 21 (Order granting leave to amend) *and* Doc. 22 (Am.Compl.). The Amended Complaint properly omits references to Equifax, but it also appears to inadvertently omit a paragraph identifying Trans Union LLC as a Defendant. *Compare* Compl. at ¶ 5 (paragraph identifying Trans Union LLC as a Defendant) *with* Am. Compl. (omitting same paragraph). Nevertheless, the Amended Complaint retains the Plaintiff's substantive allegations against Trans Union LLC, *see e.g.,* Am. Compl. at ¶ 69, so her omission of an identifying paragraph is of no consequence.

On May 8, 2001, Key Bank filed a Motion under Federal Rule of Civil Procedure 12(b)(6), seeking dismissal of the claims asserted against it in the Amended Complaint. *See* Key Bank's Mot. to Dismiss Am. Compl. (Doc. 25). The briefing on that motion has come to a close, and it is now ripe for adjudication.

In reviewing Key Bank's Motion, this magistrate judge has come to conclude that the Plaintiff cannot state claims against that Defendant upon which relief can be granted. This conclusion, however, is based on grounds other than those specifically addressed by Key Bank. Thus, it is recommended that the District Court dismiss the claims against Key Bank, *sua sponte,* under Rule 12(b)(6).

B. *Factual Background and Claims Alleged Against Key Bank*

In the Amended Complaint, the Plaintiff alleges the following facts relevant to her claims against Key Bank.

In July 1994, the Plaintiff and her husband Jeffrey J. Fino ("husband") secured a consumer vehicle loan with Key Bank for the purchase of a vehicle. *See* Am. Compl. at ¶ 4.

In February 1998 Ms. Fino's husband, in his sole capacity, filed for Chapter VII bankruptcy in the United States Bankruptcy Court for Western District of Pennsylvania. He was awarded a discharge from bankruptcy in May of the same year. *See id.* at ¶¶ 4-5. Under the bankruptcy proceedings, the Plaintiff's husband reaffirmed his debt to Key Bank, and the Finos at all relevant times continued to make payments on their loan with Key Bank. *See id.* at ¶¶ 7-8.

On May 11, 1998, the Plaintiff learned that a mortgage application she submitted had been denied because a bankruptcy appeared on her credit report. *See id.* at ¶ 10. This was true despite the fact the she had not filed for bankruptcy and was not a party to her husband's bankruptcy proceedings. *See generally id.* at ¶ 5.

**\*2** On approximately May 12, 1998, Ms. Fino contacted Key Bank by telephone to complain of the incorrect information appearing on her credit report. *See id.* at ¶ 11. She followed this verbal complaint with written complaints. *See id.*

In response, Key Bank conducted an investigation and on July 1, 1998 issued a letter to the Plaintiff

and the Reporting Agencies stating that any references to the bankruptcy should be removed from Ms. Fino's credit reports. *See id.* at ¶ 12. The letter incorrectly stated, however, that her Key Bank account should be listed as a "charge off," *i.e.,* that the account had been "charged off as bad debt." *See id.* at ¶¶ 12-14; *see also, e.g.,* Trans Union LLC credit report attached as Ex. G to Original Compl.

Shortly thereafter, the Plaintiff contacted Key Bank to complain of the "charge off" reference in its letter. *See* Am. Compl. at 14. On July 13, 1998, within two weeks of its first letter, Key Bank sent a second letter to the Plaintiff and the Reporting Agencies clarifying that "all references to charge offs and bankruptcies should be deleted from [Ms. Fino's] credit report and that [her] account was active." *See id.* at ¶ 15.

In approximately November 1998, the Plaintiff came to learn that certain of her credit reports continued to show bankruptcy, charge off, and/or inactive account designations. *See id.* at ¶ 18. The Plaintiff alleges that, "[i]n response to the[se] erroneous reports, [she] sent each [Reporting Agency] a copy of Key Bank's letter stating that the [b]ankruptcy and charge off information was erroneous, and asked that they update her account." *See id.* at ¶ 20. Thereafter, she "received confirming statements from each of the [Reporting Agencies] ... stating that the bankruptcy and charge[ ] off information had been removed" from her credit reports. *See id.*

The Plaintiff alleges that, nevertheless, certain of her credit reports issued thereafter continued to contain the incorrect information. *See id.* at ¶ 22. Accordingly, she telephoned Key Bank to complain of "the persistent misinformation being reported on her credit reports." *See id.* ¶ 23. She alleges that, in response, Key Bank stated on January 29, 1999 that "it would continue to report the Plaintiff's credit information as it was currently being reported and would not make any changes." *See id.* at ¶ 24.

On February 1, 1999, the Plaintiff filed a complaint

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

regarding Key Bank with the Comptroller of Currency for the Administrator of National Banks. *See id.* at ¶ 26. Ms. Fino alleges that "[t]he Comptroller's investigation ended when Key Bank issued a letter dated May 5, 1999 to both the Plaintiff and the [Reporting Agencies] that correctly stated the status of the Fino's [sic] account." *See id.* at ¶ 29.

Still, the Plaintiff alleges, she continued to have problems with her credit reports. For example, Ms. Fino was allegedly denied a credit card in October 2000 because one of the Reporting Agency's reports "include[d] a bankruptcy." *See id.* at ¶ 34. This allegedly was true despite the fact that, in August 1999, the loan held by Key Bank had been paid by the Finos in full. *See id.* at ¶ 30.

**\*3** In her claims against Key Bank, the Plaintiff alleges that the institution "[n]egligent[ly]" and/or "[w]illful[ly]" misreported credit information regarding her, in violation of 15 U.S.C. §§ 1681s-2(b), 1681n, and 1681o. *See generally id.* at ¶¶ 38-66. In the Counts asserted against Key Bank, the Plaintiff states that:
• "the Plaintiff [repeatedly] notified Key Bank of the improper reporting of a bankruptcy or a bad debt charge off on her credit report";
• in July 1998, Key Bank notified each of the Reporting Agencies "that all references to charge-offs and bankruptcies should be deleted from her credit report[s]";
• upon the Plaintiff's learning that her credit reports continued to state the inaccurate information, she "sent each [Reporting Agency] a copy of Key Bank's letter stating" that the information was inaccurate and requesting that it be updated;
• upon their receipt of the Plaintiff's correspondences enclosing Key Bank's letter, the Reporting Agencies were obligated under the FCRA to notify Key Bank "of the dispute";
• "[t]he Plaintiff believes, and therefore avers, that the [Reporting Agencies] met" the notification requirement stated immediately above in October or November of 1998;
• upon receiving such notice from the Reporting Agencies, Key Bank was required under the FCRA

to "conduct an investigation and report the results of [it] to the [Reporting Agencies]"; and
• "[e]ven after the Plaintiff complained to Key Bank about the misinformation appearing on her credit reports, th[e inaccurate] information continued to appear ... as recently as October ... 2000."

*See id.* at ¶¶ 39-40, 42-47 (stating these averments in support of negligent misreporting claim); *see also id.* at ¶¶ 54-55, 57-59, 62 (same for willful misreporting claim).

Based on these allegations, Ms. Fino alleges that "Key Bank has been negligent in not ensuring that the misinformation it supplied to the [Reporting Agencies] has been adequately corrected." *See id.* at ¶ 43. She states the same allegations in support her willful misreporting claims, adding that in January 1999 "Key Bank[ ] willful[ly] refus[ed] to correct the misinformation in the Plaintiff's credit report" and stated it "would continue to report her credit information as it was currently being reported...." *See id.* at ¶¶ 60-61.

The aforementioned allegations form the only bases for the Plaintiff's claims against Key Bank.FN3

> FN3. The Plaintiff also alleges FCRA claims against the Reporting Agencies, *see* Counts III and IV of Am. Compl., but those allegations are not implicated by Key Bank's request for dismissal.

### *ANALYSIS*

### 1. *Key Bank's Arguments for Dismissal Under Rule 12(b)(6)*

In moving for dismissal under Rule 12(b)(6), Key Bank asserts three arguments: a) that the Plaintiff's claims against it are time barred under the limitations period provisions of the FCRA; b) that Key Bank may not be liable under 15 U.S.C. § 1681s-2(b) ("Section 1681s-2(b)") "because a credit reporting agency never notified [it] that a potential error existed in [the] Plaintiff's credit report[s]"; and c) that the Plaintiff's claims fall

Page 4
Not Reported in F.Supp.2d, 2001 WL 849700 (W.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

under 15 U.S.C. § 1681s-2(a) ("Section 1681s-2(a)"), a section for which there is no private right of action.

**\*4** Having reviewed the specific arguments presented by Defense counsel in support of dismissal, this magistrate judge finds them less than entirely convincing. For reasons other that those articulated by Key Bank, however, this magistrate judge agrees that the Plaintiff's claims fall under Section 1681s-2(a), a section for which no private right of action exists. Thus, the District Court should *sua sponte* dismiss the Plaintiff's claims against Key Bank under Rule 12(b)(6) and deny as moot the Defendant's other, less convincing arguments for dismissal.

### 2. The FCRA Provisions Governing the Duties of "[F]urnishers of [I]nformation to [C]onsumer [R]eporting [A]gencies"

On September 30, 1997, well before the incidents giving rise to this litigation, new provisions of the FCRA went into effect governing the "[r]esponsibilities of furnishers of information to consumer reporting agencies." *See* § 1681s-2; *see also Ryan v.. Trans Union Corp.,* 2001 WL 185182, *3 (N.D.Ill. Feb. 26, 2001)* (unpublished opinion) (noting that same provisions went into effect on September 30, 1997). These provisions, codified under Section 1681s-2, identify two general types of obligations owed by furnishers: those addressing their duty "to provide accurate information" to credit reporting agencies, as stated in Section 1681s-2(a); and their duty under Section 1681s-2(b), upon receiving notice of consumer disputes from reporting agencies, to investigate said disputes and report the results to consumer reporting agencies.

Regarding the first class of duties, Section 1681s-2(a) provides in relevant part:
A [furnisher] shall not furnish information ... to any consumer reporting agency if ... the [furnisher] has been notified by the consumer ... that [the] specific information is inaccurate ... and ... the information is, in fact, inaccurate.

....
A [furnisher] who ... has furnished to a consumer reporting agency information that the [furnisher] determines is not complete or accurate [, moreover,] ... shall promptly notify the consumer reporting agency of that determination ... and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.

*See* §§ 1681s-2(a)(1)(B), 1681s-2(a)(2).

The FCRA dictates that these and the other provisions of Section 1681s-2(a) are to be "enforced exclusively ... by the Federal agencies and officials and [certain] State officials...." *See* § 1681s-2(d). Under this provision, the Act "grants *the FTC exclusive enforcement power over* " Section 1681s-2(a), and "*there is no private right of action* for a violation of" the Section. *See Olexy v. Interstate Assurance Co.,* 113 F.Supp.2d 1045, 1047 (S.D.Miss.2000) (citations and internal quotations omitted, emphasis added); *Quigley v. Pennsylvania Higher Educ. Assistance Agency,* 2000 WL 1721069, *2 (N.D.Cal. Nov. 08, 2000)* (unpublished opinion) (same).

**\*5** Regarding the second type of duties owed by furnishers, those regarding the duty to investigate consumer disputes, Section 1681s-2(b) provides in relevant part:
After receiving notice pursuant to section 1681i(a)(2)[, which requires a consumer reporting agency to notify the furnisher regarding customer disputes within five days of the reporting agency's receiving notification from the consumer of the same,] ... the [furnisher] shall-
(A) conduct an investigation with respect to the disputed information;
(B) review all relevant information provided by the consumer reporting agency ...;
(C) report the results of the investigation to the consumer reporting agency; and
(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the [furnisher has] furnished the information....

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 849700 (W.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

*See* § 1681s-2(b)(1).

Most of the courts considering the issue have concluded that Section 1681s-2(b), unlike Section 1681s-2(a), may form the basis for a private cause of action, so long as the plaintiff shows that the furnisher "received notice from a *consumer reporting agency,*" as opposed to the plaintiff alone, "that the credit information is disputed." *See, e.g., Dornhecker v. Ameritech Corp.,* 99 F.Supp.2d 918, 928-29 (N.D.Ill.2000) (emphasis in original) (dismissing without prejudice the plaintiff's claim under 1681s-2(b) because his pleadings alleged that he, not a consumer reporting agency, notified the furnisher of the dispute).[FN4]

> [FN4.] Although Key Bank argues that Section 1681s-2(b) does not apply "because a credit reporting agency never notified [it] that a potential error existed in [the] Plaintiff's credit report[s]," *see* discussion *supra* at 8, the Plaintiff states upon information and belief that the Reporting Agencies provided such notice. *See id.* at 7. In addition, she claims to have notified the Reporting Agencies of the continued errors when she "sent each [of them] a copy of Key Bank's [previously issued] letter stating" that the information in question was inaccurate. *See id.* at 6. If the Plaintiff could otherwise state a claim under Section 1681s-2(b), her statements on information and belief that the Reporting Agencies notified Key Bank of a dispute would suffice at this stage in the litigation. *See, e.g., Jaramillo v. Experian Info. Solutions, Inc.,* 2001 WL 568988, *6 (E.D.Pa. May 21, 2001) (unpublished opinion) (holding same and stating: "When [the plaintiff] filed this complaint, [he] could not have known whether [reporting agencies] had forwarded the inaccurate information to [the furnisher].... When this information is provided to [the] plaintiff in discovery, it will become clear whether [he] has a cause of action against [the furnisher under Section 1681s-2(b) ], or

solely against the credit reporting agencies."). Nevertheless, the Plaintiff's claims against Key Bank fall squarely within provisions stated in Section 1681s-2(a), and therefore they should be dismissed.

The District Court need not reach the issue of whether a private claim can be stated under Section 1681s-2(b). This is true because, based on the facts described in the Amended Complaint, the Plaintiff's claims undeniably fall within provisions stated in Section 1681s-2(a).

As noted above, the Plaintiff alleges that she first contacted Key Bank directly in May 1998 to complain of the inaccurate information being communicated in the Reporting Agencies' reports. *See* discussion *supra* at 4. She also expressly alleges that, within approximately two months of her first complaint to Key Bank, the Defendant had conducted an investigation of the matter and issued a letter to the Reporting Agencies stating that "*all references to charge-offs and bankruptcies should be deleted from her credit report[s] ....*" *See id.* (emphasis added). The remainder of her allegations, then, address either: (a) Key Bank's failure thereafter to "ensur[e] that the misinformation it supplied ... ha[d] been adequately corrected," *see id.;* or (b) the Defendant's having continued to report the inaccurate information to the Reporting Agencies, despite its previously having detected and reported the error. *See* Am. Compl. at ¶ 60 ("On January 29, 1999, the Plaintiff was informed by ... Key Bank ... that [it] would continue to report her credit information as it was currently being reported and would not make any changes.").[FN5]

> [FN5.] The Plaintiff's allegation that Key Bank represented it "would continue to report her credit information as it was currently being reported" is ambiguous, at best. The Plaintiff alleges that, in July 1998, Key Bank recognized and reported to the Reporting Agencies that references to bankruptcy or charge offs were erroneous and should be removed from

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 849700 (W.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Ms. Fino's credit reports. *See* discussion *supra* at 4. Thus, if this was how the Plaintiff's credit was "currently being reported," then Key Bank acted properly in continuing to make such reports. Nevertheless, the court is obligated to read all reasonable inferences in favor of the Plaintiff, and other averments may be read to infer that Key Bank continued to mis-report the information that was previously investigated and learned to be incorrect. *See, e.g.,* Am. Compl. at ¶ 47 ("Even after the Plaintiff complained about the misinformation appearing on her credit reports, this information continued to appear for more than two years...."). Indeed, the Plaintiff's briefing in opposition to dismissal relies on such an inference. *See* Pl.'s Br. in Opp'n to Key Bank's Mot. to Dismiss (Doc. 28, hereinafter cited as "Pl.'s Opp'n Br.") at 12 ("it is likely that ... Key Bank ... continued to issue false information regarding the loan to which [the Plaintiff] was a party").

**\*6** These claims, as well as the alleged facts leading up to them, fall squarely within the provisions of Section 1681s-2(a). As noted above Section 1681s-2(a) provides that, if a furnisher "*has been notified by the consumer*" that information regarding the consumer "is inaccurate" and "*the information is, in fact, inaccurate,*" the furnisher shall not provide it to any credit reporting agency. *See id., § 1681s-2(a)(1)(B)(i)-(ii)* (emphasis added). This provision describes exactly what happened in the instant case. The Plaintiff's own pleadings assert that, when she first learned that Key Bank was reporting incorrect information, she notified the institution of the same. *See* Am. Compl. at ¶ 11. Within two months of her first contact, Key Bank issued a letter to the Reporting Agencies "stating that all references to charge-offs and bankruptcies should be deleted from her credit report[s]." *See id.* at ¶ 15.

What happened thereafter is also governed by Section 1681s-2(a). The Section contains provisions specifically addressing a furnisher's "[d]uty to correct and update information," which state:

A [furnisher] who ... has furnished to a consumer reporting agency *information that the [furnisher] determines is not complete or accurate ... shall promptly notify the consumer reporting agency of that determination ...* and *shall not thereafter furnish to the agency any of the information that remains not complete or accurate.*

*See* § 1681s-2(a)(2) (emphasis and double-emphasis added).

Key Bank's duties to correct information it determined to be inaccurate, and to refrain from continuing to report such known, inaccurate information, are expressly addressed by the above-quoted provisions. *See id.* Unfortunately for the Plaintiff, though, the enforcement of these provisions is exclusively reserved to the FTC; there is no private right of action. *See Olexy,* 113 F.Supp .2d at 1047.

Recognizing that a private claim under Section 1681s-2(a) fails, the Plaintiff attempts to "shoehorn" her claims against Key Bank into Section 1681s-2(b). *See* Am. Compl., Counts I & II (alleging violations of Section 1681s-2(b)).FN6 Specifically, Plaintiff's counsel looks to the provisions in Section 1681s-2(b) that require a furnisher, upon notice from a reporting agency, to investigate consumer disputes and report the results to reporting agencies. *See generally, e.g.,* Am. Compl. at ¶¶ 43-46.

> FN6. Although the Plaintiff's Amended Complaint also makes reference to Sections 1681n and 1681o, those provisions do not provide an inroad to liability for Key Bank. Section 1681s-2(c) specifically states that, except under circumstances not presented here, "Sections 1681n and 1681o ... do not apply to any failure to comply with" Section 1681s-2(a). *See* § 1681s-2(c) (*citing* Section 1681(c)(1)(B) as only exception to

Not Reported in F.Supp.2d, 2001 WL 849700 (W.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

non-applicability of Sections 1681n and 1681o); *see also* § 1681(c)(1)(B) (addressing "State action[s] for violations" of the FCRA) (emphasis added).

In this magistrate judge's opinion, the Plaintiff's attempt to massage her averments into Section 1681s-2(b) tortures the plain language of the Act. Plaintiff's counsel would have the court view her alleged complaints to the Reporting Agencies, regarding inaccuracies already detected and reported by Key Bank, as implicating a new duty to investigate. What precisely Key Bank was to investigate, when it had already reviewed the Plaintiff's information in July 1998 and notified the Reporting Agencies it was inaccurate, is beyond the court's comprehension.

**\*7** This is not to say that Key Bank's actions, as alleged by the Plaintiff, were in full compliance with the FCRA. Ms. Fino expressly avers that the Defendant was negligent in "not ensuring that the misinformation it supplied to the [Reporting Agencies] ha[d] been *adequately corrected*," and she implicitly asserts that Key Bank willfully "*continued to issue false information* " after learning of its errors. *See* Am. Compl. at ¶ 43 (emphasis added) *and* Pl.'s Opp'n Br. at 12 (emphasis added). But the FRCA provisions addressing Key Bank's "[d]uty to *correct and update information* " and to "*not [continue] ... furnish [ing] ... information that remain[ed] not complete or accurate* " fall under Section 1681s-2(a), a section for which there is no private right of action. *See* §§ 1681s-2(a)(1)(B), 1681s-2(a)(2) (emphasis added); *see also* § 1681s-2(b).

Plaintiff's counsel also appears to urge that, under the circumstances presented here, equity compels the recognition of Ms. Fino's right to a private action. *See generally* Pl.'s Opp'n Br. at 15 (stating that Key Bank's "attempt to claim that it should not be held responsible for subsequent false reports would" result in "manifest injustice"); *see also id.* at 16-18 (arguing that Key Bank should be equitably estopped from denying liability under the

Act). Regardless of the equities, however, the court is not at liberty to rewrite the statute to manufacture a private right of action against this Defendant. To ignore the provisions in Section 1681s-2(a) expressly addressing the duties allegedly breached by Key Bank would be to disregard the "well-settled canon of statutory construction that courts should *disfavor interpretations of statutes that render language superfluous.*" *See U.S. v. Voigt,* 89 F.3d 1050, 1087 (3d Cir.1996) (citation and internal quotations omitted, emphasis added).

Simply stated, under any possible reading of the Amended Complaint, Section 1681s-2(a) squarely addresses the duties allegedly breached by Key Bank. The enforcement of that Section is reserved exclusively to an agency of the federal government. Thus, the Plaintiff's claims against Key Bank should be dismissed.

3. A *Sua Sponte* Dismissal of the Plaintiff's Claims Against Key Bank Is Permissible Because this Report and Recommendation Provides Her Notice of the Potential *Dismissal and an Adequate Opportunity to Respond.*

As noted above, the basis for this magistrate judge's recommendation of dismissal differs from those specifically identified by Key Bank. Accordingly the recommended dismissal, if adopted, should be made *sua sponte.*

The Court of Appeals for the Third Circuit has recognized that "there are times when a court may *sua sponte* raise the issue of the deficiency of a pleading under Rule 12(b)(6)," provided the litigant is afforded "notice and an opportunity to respond." *See Roman v. Jeffes,* 904 F.2d 192, 196 (3d Cir.1990) (citations omitted); *cf. also Otis Elevator Co. v. George Washington Hotel Corp.,* 27 F.3d 903, 910 (3d Cir.1994) (district court must "give[ ] notice and an opportunity to oppose summary judgment" before entering summary judgment *sua sponte* ). This is one of those times, as the Plaintiff cannot state claims against Key Bank upon which relief may be granted.

**\*8** Regarding notice, this Report and

Not Reported in F.Supp.2d, 2001 WL 849700 (W.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Recommendation undoubtedly notifies Plaintiff's counsel of the District Court's potential *sua sponte* dismissal. With respect to the Plaintiff's opportunity to respond, this magistrate judge will extend the period for filing objections to the Report and Recommendation. Accordingly, the court is satisfied that the requisite notice and opportunity to respond have been provided. [FN7]

> FN7. This magistrate judge notes that other federal courts have sanctioned use of the report and recommendation procedures to fulfill the notice and response requirements in connection with *sua sponte* rulings. *See, e.g., United States v. Lee,* 145 F.3d 1347, 1998 WL 292388, *2 (10th Cir. May 28, 1998)* (unpublished opinion) (finding that objections to report and recommendation provided party "ample opportunity to respond" to potential *sua sponte* ruling).

*CONCLUSION*

For the reasons stated above, it is recommended that the District Court *sua sponte* dismiss the Plaintiff's claims against the Defendant KeyBank National Association under Federal Rule of Civil Procedure 12(b)(6), and deny as moot that Defendant's Motion to Dismiss (Doc. 25).

Under the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, objections to this Report and Recommendation would be due by August 13, 2001.

Because this magistrate judge has recommended a *sua sponte* dismissal, however, the deadline for filing objections is hereby extended until August 22, 2001. Responses to objections are due by September 3, 2001.

W.D.Pa.,2001.
Fino v. Key Bank of New York
Not Reported in F.Supp.2d, 2001 WL 849700 (W.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.