IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SININA TALLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 07-410 (***) |
| ) | |
| COMCAST CORPORATION, INC., ) | |
| EXPERIAN INFORMATION SOLUTIONS, ) | |
| INC., and EASTERN ACCOUNT SYSTEM ) | |
| OF CONNECTICUT INC., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT COMCAST CORPORATION, INC.'S BRIEF
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

MORRIS NICHOLS ARSHT & TUNNELL LLP
Thomas C. Grimm (#1098)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
jparrett@mnat.com
*Attorneys for Defendant Comcast Corporation, Inc.*

Dated: January 2, 2008
1317684

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................. ii

NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

SUMMARY OF ARGUMENT ......................................................................................... 2

STATEMENT OF FACTS ................................................................................................ 2

ARGUMENT ..................................................................................................................... 6

    I.    SUMMARY JUDGMENT STANDARD ............................................................. 6

    II.    COMCAST DID NOT VIOLATE THE FAIR CREDIT REPORTING ACT BY TURNING MS. TALLEY'S DELINQUENT ACCOUNT OVER TO EASTERN ............................................ 7

        A.    Ms. Talley Does Not Have Standing To Bring A Claim For Erroneously Reporting A Delinquent Account. ........................................... 7

        B.    Ms. Talley's Claims Also Fail Because There Is No Genuine Dispute That Ms. Talley's Account Was Delinquent And Therefore The Information Reported By Comcast To Eastern Was Accurate ............................................................... 9

    III.    PLAINTIFF HAS NOT, AND CANNOT, STATE A CLAIM UNDER SECTION 1681S-2(B) BECAUSE COMCAST DID NOT RECEIVE NOTICE AS REQUIRED BY THE STATUTE ........................ 10

    IV.    MS. TALLEY'S DEFAMATION CLAIM FAILS AS A MATTER OF LAW BECAUSE THE INFORMATION ON HER CREDIT REPORT WAS TRUE AND ACCURATE .......................................................... 12

CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

Cases

*Anderson v. Liberty Lobby*
    477 U.S. 242 (1986) ............................................................................................ 6

*Blake v. Minner*,
    2007 U.S. Dist. LEXIS 32819 (D. Del. May 1, 2007) ................................. 12, 13

*DeBonaventura v. Nationwide Mut. Ins. Co.*,
    428 A.2d 1151 (Del. 1981) .............................................................................. 13

*Elmore v. N. Fork Bancorporation, Inc.*,
    325 F. Supp. 2d 336 (S.D.N.Y. 2004) .............................................................. 9

*Fino v. Key Bank of N.Y.*,
    No. 00-375E, 2001 WL 849700 (W.D. Pa. July 27, 2001) ............................... 9

*Gordon v. Greenpoint Credit*,
    266 F. Supp. 2d 1007 (S.D. Iowa 2003) ........................................................... 9

*Horowitz v. Fed. Kemper Life Assurance Co.*,
    57 F.3d 300 (3d Cir. 1995) ............................................................................... 6

*Kennedy v. Hughes*,
    596 F. Supp. 1487 (D. Del. 1984) .................................................................. 13

*LP Matthews LLC v. Bath & Body Works, Inc.*,
    Civ. No. 04-1507-SLR, 2006 U.S. Dist. LEXIS 76116 (D. Del.
    Oct. 19, 2006) .................................................................................................. 6

*Martha Jane Toy v. Plumbers & Pipefitters Local Union No. 74 Pension Plan*,
    439 F. Supp. 2d 337 (D. Del. 2006) ................................................................ 7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ........................................................................................ 6

*Nelson v. Chase Manhattan Mortgage Corp.*,
    282 F.3d 1057 (9th Cir. 2002) ....................................................................... 11

*Riley v. Moyed*,
    529 A.2d 248 (Del. 1987) ......................................................................... 12, 13

iii.

*Yutesler v. Sears Roebuck & Co.*,
    263 F. Supp. 2d 1209 (D. Minn. 2003)    9

<u>Statutes</u>

15 U.S.C. § 1681    7

Fed. R. Civ. P. 56(e)    6

1.

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Sinina Talley ("Ms. Talley") brought this suit, *pro se*, against Defendants Comcast Corporation, Inc. ("Comcast"), Experian Information Solutions, Inc. ("Experian") and Eastern Account System of Connecticut Inc. ("Eastern") on June 25, 2007. The Complaint alleged violations of the Fair Credit Reporting Act ("FCRA") and the Fair Debt Collection Practices Act. Defendants Eastern and Experian filed Answers on July 16 and July 23, respectively. Comcast filed a motion to dismiss arguing that Ms. Talley did not have standing to enforce the alleged violations, but that instead only the government could bring those claims. (D.I. 16.) Subsequently, Eastern also brought a motion for judgment on the pleadings. (D.I. 20.)

Ms. Talley subsequently hired an attorney and the parties stipulated that Ms. Talley could file an amended complaint and that the pending motions would be withdrawn without prejudice. (D.I. 25.) The Amended Complaint alleges Comcast violated the FCRA by reporting Ms. Talley's account to Experian as delinquent, and that Ms. Talley disputed that her account was delinquent. The undisputed facts shown from the record of Ms. Talley's account, however, demonstrate that Ms. Talley's account was in fact past due and that, therefore, Comcast was justified in turning her account over to Eastern for collection, which independently reported Ms. Talley to Experian.

Defendants Eastern and Experian answered the Amended Complaint on October 2. Comcast answered the Amended Complaint on October 16. Because the undisputed facts of record demonstrate that Comcast did not violate the FCRA as a matter of law, Comcast brings this motion for summary judgment.

## SUMMARY OF ARGUMENT

The allegations of the Amended Complaint are based on the erroneous premise that Ms. Talley returned all of her leased Comcast equipment and paid her bill in full prior to Comcast turning her account over to collections. The written record, however, demonstrates that was not the case.

A review of Ms. Talley's account with Comcast reveals that, in fact, her account *was* past due in February, 2007 when Comcast turned the account over to collections. Ms. Talley also failed to return two leased pieces of equipment to Comcast. Moreover, Ms. Talley's account history reveals that she was consistently late on her payments as a Comcast subscriber for numerous months in the two years before her account was turned over to collections. Due to Ms. Talley's consistent delinquency, Comcast was fully justified in starting the collection process. Comcast has not violated any part of the Fair Credit Reporting Act, and Ms. Talley cannot claim she was defamed by the truthful statements made about her account. Thus, because there can be no dispute about these facts, Comcast should be granted summary judgment as a matter of law on her claims.

## STATEMENT OF FACTS

Ms. Talley was a subscriber of Comcast's cable television and internet services from August 2004 through December 21, 2006. Ms. Talley also leased three pieces of equipment from Comcast:

1. a cable box (serial number GI1517TDG627) valued at $140.00,

2. a cable modem (serial number 00910528312313) valued at $35.00, and

3. a DVR digital converter (serial number M4130DA00365) valued at $362.00.

3.

(*See* Appendix, Exhibit 1, Comcast Work Order.)[1]

Through the two and half years that Ms. Talley was a subscriber of Comcast's services, she was consistently late paying her cable bill. (*See generally* Exhibits 2 to 31, Talley Billing Statements.) For instance, shortly after her service started in August 2004, Ms. Talley was late paying for her September-October 2004 service (Exhibit 3). In 2005, Ms. Talley was late on her February, August and September bills. (*See* Exhibits 8, 14 & 15.) In 2006, Ms. Talley was even more delinquent with her payments, as for three months straight (February, March, and April) her statements all show amounts past due. (Exhibits 20 to 22.) Ms. Talley finally paid off her balance in May, but was immediately late again for another four straight months from June to September 2006 (Exhibits 24 to 27). Ms. Talley paid off her past due balance by the time her October 13, 2006 statement was generated (Exhibit 28), but then failed to pay her October statement as well as her November and December statements (Exhibits 29 and 30).[2] Ms. Talley's December 15, 2006 statement of $411.52 was for $268.33 in past due charges plus a $4.95 late fee, and her current regular monthly service charges of 138.24.[3] (Exhibit 30.)

Following Ms. Talley's continued pattern of delinquent payments, Comcast "soft-disconnected" her service by turning her cable signal off on December 21, 2006. Although this soft-disconnection often prompts Comcast's customers to pay their bills, Ms. Talley did not.

---

[1] Exhibits to this brief are filed separately as the Appendix of Exhibits to Defendant Comcast Corporations, Inc.'s Brief in Support of its Motion for Summary Judgment. All citations referring to Exhibits 1-39 can be located therein.

[2] Overall, Ms. Talley's account was past due 75% of the time in 2006 as she was late on nine of her twelve statements.

[3] The regular service charges are advanced billed for services to be applied in the month of the statement. In this case, the charges were for services from December 19, 2006 through January 18, 2007.

4.

Therefore, Comcast physically disconnected her service at the tap on December 30, 2006. (Exhibit 32 [Disconnect Work Order].)

By January 4, 2007, Ms. Talley still had not paid her outstanding bill causing Comcast to generate a final statement for her. (Exhibit 31.) This final statement was for $685.65, reflecting the previous balance of $411.52 plus one time equipment charges of $398.99 and minus a credit of $124.86 for the advanced billed services from December 21, 2006 to January 18, 2007. The equipment charges consisted of a Non Pay Interrupt fee of $1.99 and unreturned equipment valued at $397.00. (*Id*. at 2.) That unreturned equipment was the cable modem (valued at $35.00) and the DVR digital converter (valued at $362.00). Ms. Talley was not charged for her cable box.

Ms. Talley returned her cable box to Comcast on January 23, 2007. (Exhibit 1 to Complaint D.I. 1.) However, she did not return either the cable modem or the DVR, nor did she pay her bill for the outstanding service charges.[4]

On February 8, 2007, Comcast wrote off as a bad debt the total amount due of $685.65 on Ms. Talley's account (Exhibit 33, 2/8/07 Write-off file). Notably, Exhibit 33 lists the serial numbers for both the cable modem (00910528312313) and the DVR (M4130DA00365) – for which Ms. Talley was charged – but not Ms. Talley's cable box, for which she was not charged. Ms. Talley's account was subsequently forwarded on February 12, 2007 to Defendant Eastern Account System of Connecticut, Inc. ("Eastern") for collection.

---

[4]   Inexplicably, Ms. Talley's Amended Complaint does not mention at all that she also had a cable modem and DVR from Comcast.

5.

Comcast finally received a payment from Ms. Talley on February 12, 2007 in the form of a check dated February 8, 2007 for $411.52, covering the unpaid cable services.[5] (Exhibit 34.) Comcast credited Ms. Talley's account by that amount and on February 15, 2007, forwarded this updated information to Eastern. (Exhibit 35, 2/15 write-off/recovery file). Following payment, Ms. Talley's outstanding debt was $274.13, which represented the value of Comcast's equipment in her possession valued at $398.99 less the amount credited to her of $124.86 for advanced billed services.

After Ms. Talley's account was placed in collections, she returned the cable modem to Comcast on April 16, 2007. (*See* Exhibit 36 showing return of serial number 91052812313.) Ms. Talley's account was credited on April 17 for $35.00 reflecting the value of the cable modem. (*See* Exhibit 37.) However, Ms. Talley inexplicably failed to return the DVR. Nonetheless, her account was also credited $362.00 for the value of the DVR. (*Id.*) Comcast informed Eastern on May 10, 2007 that Ms. Talley's account no longer had a balance due. (*See* Exhibit 38.) Following the crediting of Ms. Talley's account for the modem and DVR, Ms. Talley's account was actually left with a positive balance of $122.87 (which represented the advanced billed services minus the $1.99 Non Pay Interrupt fee). (*See* Exhibit 39.) On May 18, 2007, Comcast generated and mailed a refund check to Ms. Talley for that amount. Ms. Talley received and cashed that check on or about May 24.[6] (*See id.*)

---

[5] Ms. Talley alleges in her Amended Complaint that the return of her cable box on January 23 "satisfied Plaintiff's obligation to Comcast" (D.I. 25 at ¶ 8), but she inexplicably omits that she sent Comcast a payment after that date.

[6] Ms. Talley's Amended Complaint also fails to mention that she received this refund check as evidence that her account with Comcast had been settled.

ARGUMENT

    I.    SUMMARY JUDGMENT STANDARD

Summary judgment under Rule 56(c) is warranted where there is "no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).

The moving party bears the burden of proving that no genuine issue of material fact exists. *LP Matthews LLC v. Bath & Body Works, Inc.*, Civ. No. 04-1507-SLR, 2006 U.S. Dist. LEXIS 76116, at *8-10 (D. Del. Oct. 19, 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986)). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Id*. at *9 (quoting *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted)).

In order to defeat a motion for summary judgment, however, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Instead, "the nonmoving party must come forward with 'specific facts showing there is a *genuine issue for trial*.'" *Id*. (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249. "[T]he mere existence of some evidence in support of the non-moving party will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably

7.

find for the nonmovant on that issue." *Martha Jane Toy v. Plumbers & Pipefitters Local Union No. 74 Pension Plan*, 439 F. Supp. 2d 337, 339 (D. Del. 2006); *see also Anderson*, 477 U.S. at 249 ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.").

II. COMCAST DID NOT VIOLATE THE FAIR CREDIT REPORTING ACT BY TURNING MS. TALLEY'S DELINQUENT ACCOUNT OVER TO EASTERN

A. Ms. Talley Does Not Have Standing To Bring A Claim For Erroneously Reporting A Delinquent Account.

Even if Ms. Talley's allegations were true, and they are not, Ms. Talley does not have standing to bring the claims alleged against Comcast in the Amended Complaint. Ms. Talley alleges that Comcast and Eastern "violated the FCRA" when Eastern allegedly "reported to Experian an account as delinquent which they knew was not delinquent" and when Eastern allegedly "reported to Experian an account as delinquent which was not delinquent and which Plaintiff informed them was not delinquent." (Amended Complaint, D.I. 25 at ¶ 51). In essence, Ms. Talley alleges that Comcast and Eastern erroneously reported an account that should not have been reported.

As demonstrated in Section II B *infra*, Comcast correctly and properly reported Ms. Talley's account as delinquent. However, even if Ms. Talley's allegations were true, Ms. Talley lacks standing to bring a claim for erroneously reporting a delinquent account. The responsibility of furnishers of information (*e.g.* Eastern) to consumer reporting agencies (*e.g.* Experian) under the Federal Fair Credit Reporting Act is covered by 15 U.S.C. § 1681s-2(a), which provides:

(a) Duty of furnishers of information to provide accurate information

(1) Prohibition

    (A)  Reporting information with actual knowledge of errors

    A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.

    (B)  Reporting information after notice and confirmation of errors

    A person shall not furnish information relating to a consumer to any consumer reporting agency if

        (i)  the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and

        (ii)  the information is, in fact, inaccurate.

The FCRA, however, explicitly limits enforcement of § 1681s-2(a) to Federal agencies and officials and State officials (§ 1681s-2(c) and (d) (emphasis added)):

    (c)  Limitation on liability

    Except as provided in section 1681(s)(c)(1)(B) of this title, sections 1681n and 1681o of this title do not apply to any violation of

        (1) subsection (a) of this section, including any regulations issued thereunder;

        (2) subsection (e) of this section, except that nothing in this paragraph shall limit, expand, or otherwise affect liability under section 1681n or section 1681o of this title, as applicable, for violations of section (b) of this section,

        (3) subsection (e) of section 1681(m) of this title.

    (d)  Limitation on enforcement

    The provisions of law described in paragraphs (1) through (3) of subsection (c) of this section (other than with respect to the exception described in paragraph (2) of subsection (c) of this section) ***shall be enforced exclusively as provided under section 1681s of this title by the Federal agencies and officials and the State officials identified in section 1681s of this title***.

Section § 1681s-2a of the FCRA, which requires furnishers of credit information like Comcast, to provide accurate information to consumer reporting agencies ("CRAs"), expressly provides that it "shall be enforced *exclusively* [emphasis added] … by the Federal agencies and officials and the State officials identified in section 1681s." 15 U.S.C. §§ 1681s-2(c)-(d) (2006). There is no private right of action to enforce this section of the FCRA. *See*, *e.g.*, *Fino v. Key Bank of N.Y.*, No. 00-375E, 2001 WL 849700, at *4 (W.D. Pa. July 27, 2001) ("Plaintiff's claims fall under Section 1681s-2(a), a section for which no private right of action exists."); *Elmore v. N. Fork Bancorporation, Inc.*, 325 F. Supp. 2d 336, 339 (S.D.N.Y. 2004) (finding no private right of action under section 1628s-2(a)); *Gordon v. Greenpoint Credit*, 266 F. Supp. 2d 1007, 1009 (S.D. Iowa 2003) ("Because Congress left enforcement of [Section 1681s-2(a)] solely to Federal and State agencies and officials, [p]laintiffs could not maintain a private cause of action."); *Yutesler v. Sears Roebuck & Co.*, 263 F. Supp. 2d 1209, 1210-11 (D. Minn. 2003) ("The duties imposed by Section 1681s-2(a) are not subject to private rights of action by virtue of 15 U.S.C. § 1681s-2(d).").

As Ms. Talley does not have standing to enforce her claims under section 1681s-2(a), Comcast should be granted summary judgment.

> B. Ms. Talley's Claims Also Fail Because There Is No Genuine Dispute That Ms. Talley's Account Was Delinquent And Therefore The Information Reported By Comcast To Eastern Was Accurate.

Even if Ms. Talley had standing to bring her claims that Comcast and Eastern violated the FCRA by furnishing her account information to Experian, those claims still fail as a matter of law because the information reported was accurate. In order to violate § 1681s-2a, the furnisher must provide information that it "knows or has reasonable cause to believe that the information is inaccurate," or that "the information is, in fact, inaccurate." 15 U.S.C. § 1681s-

10.

2(a). In this case, however, the information provided by Comcast was accurate and, thus, Comcast did not violate the FCRA.

As described above, it cannot be disputed that, when Comcast reported Ms. Talley's account to Eastern in February 2007, it was delinquent. As of the beginning of the month, Ms. Talley owed $685.65 for past due service charges ($286.66) and unreturned equipment ($398.99). Even though Ms. Talley made a very late payment with a check dated February 8, 2007 for $411.52, she still owed Comcast $274.13 for unreturned equipment. Thereafter, Comcast accurately provided this updated information to Eastern. When Ms. Talley returned the cable modem in April and Comcast credited her account for $397.00 for both the modem and the still unreturned DVR, Ms. Talley's account showed a positive balance. Comcast also reported this update to Eastern accurately. [This information was provided to Eastern, which then independently decided to provide details of Ms. Talley's account to Experian.] Thus, Ms. Talley's claims fail because Comcast provided only accurate information about her account. Comcast should be granted summary judgment on her claims.

### III. PLAINTIFF HAS NOT, AND CANNOT, STATE A CLAIM UNDER SECTION 1681S-2(B) BECAUSE COMCAST DID NOT RECEIVE NOTICE AS REQUIRED BY THE STATUTE

Ms. Talley's Amended Complaint does not allege a claim under § 1681s-2(b) of the FRCA. Nor could it because section 1681s-2(b) is triggered only *after* a furnisher of credit information receives notice from a CRA "of a dispute with regard to the completeness or accuracy of any information provided." 15 U.S.C. § 1681s-2(b)(1) (2006). Here, the Amended Complaint does not allege that Comcast ever received notice from Experian that Ms. Talley was disputing the information reported by Comcast about her account.

The purpose of the FCRA is to provide "accurate credit reporting" "with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. §§ 1681(a)(1), (a)(4)

11.

(2006). Although the primary goal is consumer protection, Congress "did not want furnishers of credit information exposed to suit by any and every consumer dissatisfied with the credit information furnished." *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002). For this reason, Congress created a "filtering mechanism" through which consumers may notify a CRA of disputed information. *Id*.

The mechanism requires CRAs to set up a system to receive consumer disputes, after which the CRA then "reasonably determines [whether] the dispute by the consumer is frivolous or irrelevant." *Id*. (citing 15 U.S.C. § 1681i(a)(3)). Only after frivolous complaints are filtered out are notices of legitimate disputes forwarded by the CRA to furnishers of credit information for further investigation. *Id*. at 1059-60. The furnisher of credit information who receives a notice of dispute from a CRA then "has four duties: to conduct an 'investigation with respect to the disputed information;' to review all relevant information provided by the CRA; to report the results of its investigation to the CRA; and if the investigation finds the information is incomplete or inaccurate to report those results 'to all [nationwide CRAs] to which the person furnished the information.'" *Id*. at 1059 (citing 15 U.S.C. § 1681s-2(b)). Here, Comcast never incurred any of these duties because it never received notice from Experian that Ms. Talley disputed her credit information, which is an express prerequisite under the FCRA.

The Amended Complaint does not allege that (1) Comcast was ever informed by Experian that Ms. Talley was disputing the accuracy of the information, and (2) Comcast failed to investigate as required by the FCRA. Ms. Talley only alleges that "[u]pon information and belief, Experian subsequently communicated with EASCI [Eastern] to request that it investigate and confirm the accuracy of its report." (D.I. 25 at ¶ 34.) Experian's Answer to that allegation notes that "it forwarded Plaintiff's dispute via ACDV to Eastern." (D.I. 28 at ¶ 34.) Neither Ms.

12.

Talley nor Experian has alleged that Comcast was notified of the dispute as required under the FCRA, and there is no evidence that Comcast has been contacted by Experian. Because receipt of notice of the dispute from Experian is a necessary prerequisite, Comcast had no responsibility to conduct an investigation under section 1681s-2(b).

Moreover, as demonstrated above, the information reported by Comcast for Ms. Talley's account was at all times correct. Therefore, had Comcast received from Experian notice that Talley was disputing the accuracy of the information, the result still would have been the same as the information on the account was accurate. For this reason, if and to the extent Ms. Talley alleges violations of section 1681s-2(b), Comcast should be granted summary judgment on those claims as well.

IV. **MS. TALLEY'S DEFAMATION CLAIM FAILS AS A MATTER OF LAW BECAUSE THE INFORMATION ON HER CREDIT REPORT WAS TRUE AND ACCURATE**

Ms. Talley also alleges in Count IV of the Amended Complaint that "[d]efendants defamed and libeled Plaintiff by publishing third party false representations that Plaintiff was delinquent in her Comcast account." However, because the indisputable facts of record demonstrate that Ms. Talley actually was delinquent in her account, the statements she complains of were true and are not defamatory as a matter of law.

"[A] claim of defamation requires: 1) a false and defamatory communication concerning Plaintiff; 2) publication of the communication to third parties; 3) understanding of the defamatory nature of the communication by the third party; 4) fault on the part of the publisher; and 5) injury to Plaintiff." *Blake v. Minner*, 2007 U.S. Dist. LEXIS 32819, at *7-8 (D. Del. May 1, 2007). It is axiomatic then that a true statement cannot constitute defamation. *Riley v. Moyed*, 529 A.2d 248, 253 (Del. 1987) ("Under Delaware law there is no liability for defamation when a statement is determined to be substantially true."); *DeBonaventura v.*

13.

*Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1155 (Del. 1981) ("It is hornbook law that truth is an absolute defense to a defamation action."); *Kennedy v. Hughes*, 596 F. Supp. 1487, 1492 (D. Del. 1984) ("True statements of fact are not defamatory as a matter of law and do not deprive plaintiffs of any constitutionally protected interest.").

In this case, Comcast reported to Eastern on February 12, 2007 that Ms. Talley owed Comcast $685.65 for past due service and unreturned equipment charges. There can be no genuine issue of material fact that this was true. After Comcast received a payment from Ms. Talley on February 15, 2007, it promptly credited her account, updated her balance due, and informed Eastern. There is also no question that in February when the account was reported to Experian, Ms. Talley had still failed to return both the cable modem and the DVR to Comcast. Finally, once Ms. Talley returned the cable modem but not the DVR, Comcast again credited her account and informed Eastern that her account now had no balance due. All of the statements Comcast made to Eastern were accurate and, thus, the statement made on Ms. Talley's credit report was true and is not defamatory as matter of law. *Riley*, 529 A.2d at 2554 ("To support a cause of action for libel, the underlying facts must be false as well as defamatory."); *see also Blake*, 2007 U.S. Dist. LEXIS 32819, at *8 ("Because there was no falsity of statement, Plaintiff's claims for defamation and slander fail."). Comcast should be granted summary judgment on Ms. Talley's defamation claim.

14.

## CONCLUSION

For the reasons set forth above, Comcast respectfully requests that this Court grant judgment in favor of Comcast and grant any other and further relief to which Comcast should be awarded.

           MORRIS NICHOLS ARSHT & TUNNELL LLP

           */s/ Thomas C. Grimm (#1098)*
           _____
           Thomas C. Grimm (#1098)
           James W. Parrett, Jr. (#4292)
           1201 N. Market Street
           P.O. Box 1347
           Wilmington, DE  19899-1347
           (302) 658-9200
           tgrimm@mnat.com
           jparrett@mnat.com
           *Attorneys for Defendant Comcast Corporation, Inc.*

January 2, 2008
1317684

**CERTIFICATE OF SERVICE**

       I hereby certify that on January 2, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered recipients.

       Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on January 2, 2008 upon the following individuals in the manner indicated:

**VIA E-MAIL**

| | |
|---|---|
| Douglas A. Shachtman<br>DOUGLAS A. SHACHTMAN<br>  & ASSOCIATES<br>1200 Pennsylvania Avenue<br>Suite 302<br>Wilmington, DE  19806 | Chad M. Shandler<br>Jameson A.L. Tweedie<br>RICHARDS LAYTON & FINGER<br>One Rodney Square<br>Wilmington, DE  19801 |
| Allison R. Rosen<br>Jonathan Eisenberg<br>JONES DAY<br>222 East 41st Street<br>New York, NY  10017-6702 | C. Scott Reese<br>Eric M. Andersen<br>COOCH AND TAYLOR, P.A.<br>824 N. Market Street, Suite 1000<br>Wilmington, DE  19801 |

*/s/ James W. Parrett, Jr. (#4292)*

James W. Parrett, Jr. (#4292)
jparrett@mnat.com

1317684